EDITH OERTLE, APPELLANT, V. CHARLES OERTLE, APPELLEE.

21 N. W. 2d 447

FILED JANUARY 25, 1946. No. 32048.

*Hoagland, Carr & Hoagland,* for appellant.

*Beatty, Clarke & Murphy,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Edith Oertle brought this action for divorce in the district court for Lincoln County. She appeals from a decree finding generally for the defendant, denying her a divorce, and dismissing her petition.

Appellant contends the trial court erred in not permitting her to amend her petition during the trial of the case. This proposition likewise involves the trial court's ruling on her offer of testimony. She cites in support thereof our holding in Stratton v. Wood, 45 Neb. 629, 63 N. W. 917, as follows: "The right to allow amendments which do not materially change the original claim of plaintiff is expressly recognized in the provisions of section 144 of the Code of Civil Procedure. (Now section 25-852, R. S. 1943.)" See, also, Undeland v. Stanfield, 53 Neb. 120, 73 N. W. 459.

However, the appellant failed to file a motion for new trial and under our holdings these matters are not properly here for determination. As stated in Bowers v. Raitt, 96 Neb. 460, 148 N. W. 93: "It is contended that no motion for a new trial is necessary in equity causes, * * * but this court has held that a motion for a new trial is necessary in such cases, if it is desired to review alleged errors of law occurring at the trial. Farmers Loan & Trust Co. v. Joseph, 86 Neb. 256; Brady v. McGinley, 94 Neb. 761." And as stated in Pitman v. Henkens, 125 Neb. 621, 251 N. W. 282: "To review errors of law occurring upon the trial of an equity case, a motion for new trial is necessary. Farmers Loan & Trust Co. v. Joseph, 86 Neb. 256; Hall v. Bowers, 117 Neb. 619; State v. Banking House of A. Castetter, 118 Neb. 231."

See, also, State ex rel. Spillman v. Citizens State Bank, 115 Neb. 271, 212 N. W. 616.

The appellant calls attention to language used by the appellee on the occasion of an incident several years ago when a boarder was present. She was on that occasion assisting the boarder in his endeavors to return to their home from a dance. As stated in Sample v. Sample, 82 Neb. 37, 116 N. W. 953: "Whether accusations of infidelity made by one spouse against the other constitute extreme cruelty within the meaning of the statute must be determined by the facts of each particular case. In no case will they be given that effect unless they are shown to be either unfounded or malicious." We will not discuss the incident in detail but it cannot be said that under the circumstances that such remarks were either entirely unfounded or malicious. The appellee has apologized many times for having made them and under the circumstances we do not think they constitute any evidence of extreme cruelty.

The principal question involved is whether the evidence is sufficient to constitute extreme cruelty, for as stated in Brown v. Brown, 130 Neb. 487, 265 N. W. 556: "A decree of divorce from the bonds of matrimony should only be granted when the evidence bring the case within the definition of the statute providing for such relief."

We have held that: "Any unjustifiable conduct on the part of either the husband or wife, which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the bodily health and endanger the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' as defined in section 7, chapter 25, Compiled Statutes, although no physical or personal violence may be inflicted, or even threatened." Ellison v. Ellison, 65 Neb. 412, 91 N. W. 403. See, also, McNamara v. McNamara, 93 Neb. 190, 139 N. W. 1045; Peckham v. Peckham, 111 Neb. 340, 196 N. W. 628; Schmidt v. Schmidt, 120 Neb. 596, 234 N. W. 402; Brown v. Brown, 130 Neb. 487, 265 N. W. 556.

The record discloses that the parties were married on January 3, 1933, and are living in North Platte, Nebraska. He is now 55 years of age and she is 40. Three children were born to the marriage. They are Charles, age 12; Bernard, age 11; and Mainard, age 3.

Appellant had previously been married. She has a son by her first marriage, Eugene Edward Carlston, who is 19 years of age and now in the Navy.

Both parties have always been hard-working people; she in the home, which she managed economically, and he in his work. Prior to 1941, he was on W. P. A. In 1941, he acquired a truck and materially increased his earnings. He has always properly supported his family within the limits of his earning ability.

While he seems to be a regular user of intoxicating liquors and has always done so it does not appear that he has ever used it to excess. Likewise, he seems to enjoy playing cards but it does not appear that he plays for any large stakes. It does not appear that either of these habits has ever caused him to fail to properly support his family.

While it appears that on occasions the appellee has refused to take the family or children to a show or elsewhere and that the home life has not always been too smooth it can be said that on the whole they got along fairly well. Without going into too much detail, which can serve no useful purpose, the apparent difficulty arises out of the fact that they fail to find their enjoyment in the same form of recreation. She likes to go to dances. Until shortly before Mainard was born he went with her. Because of her then condition he thought she ought not go and refused to go with her. Afterward he never again went with her but did not object to her going and she continued to go. He seems to enjoy going to places where he can play cards and be in the association of men.

Under this situation the family seemed to be getting along as usual when the appellee, as was his custom, left for the harvest fields of Oklahoma and Kansas on June 18, 1945, in order to get work. He left his family in good spirits and

during his absence called her on the phone and wrote to her and sent her money for the family support. Everything seemed to be all right until his return on July 26, 1945, when her attitude was entirely changed. Shortly thereafter she brought this action, the petition for which had been drawn during his absence. What caused her attitude to change can only be surmised from the record.

Marriage is a relationship that can only be severed by the courts on the grounds fixed by statute and in the manner as therein provided. Appellant has not established any of these grounds, particularly that of extreme cruelty. The trial court was correct in its holdings and we, on trial de novo, affirm its decision.

The costs of this appeal are taxed to the appellee but we do not allow appellant any attorney fees.

AFFIRMED.