FIRST NATIONAL BANK OF BLUE HILL, APPELLEE, V. WEB-
STER COUNTY, APPELLANT.*

FILED DECEMBER 21, 1906.   No. 14,520.

Taxation: EQUALIZATION: APPEAL.  On appeal from an order of a
board of equalization in the matter of assessment of property
for taxation, the cause must be tried on the questions raised by
the complaint before that tribunal. *Nebraska Telephone Co. v.
Hall County*, 75 Neb. 405, followed and approved.

APPEAL from the district court for Webster county:
ED L. ADAMS, JUDGE.  *Affirmed.*

*A. M. Walters* and *Bernard McNeny*, for appellant.

*L. H. Blackledge*, contra.

OLDHAM, C.

This was an appeal from the board of equalization of
Webster county on the question of the amount of real
estate otherwise assessed that should be deducted from
the capital stock, surplus and undivided profits of the
First National Bank of Blue Hill.   The assessment list
furnished by the bank showed a total book value of the
capital stock, surplus and undivided profits to be $64,968.-
53.   It also showed the value of the real estate assessed as
such to be $34,380, and personalty $1,380, making a
total of $35,760, which, deducted from the above amount,
left $29,208.53.   When the board of equalization met it
was discovered that the bank's last statement on March
28, 1904, showed the following as to real estate:

Banking house, furniture and fixtures. . . .  $1,000.00
Other real estate and mortgages owned. .  10,934.12

Total . . . . . . . . . . . . . .  . . . . . . . . . . . . . . .$11,934.12

The board thereupon directed the clerk to notify the bank
to appear, which he did, and the bank appeared by its

* Rehearing allowed.  See opinion, p. 815, *post.*

attorney and cashier. And the board, over the objections of the bank, changed the list as returned by deducting the amount of real estate shown in the last statement from the total valuation of the shares of stock, surplus and undivided profits, instead of the amount returned to the assessor. The bank thereupon prosecuted its appeal from the action of the board in reducing the valuation of the real estate deducted from the valuation of its capital stock. This issue, and this issue alone, was presented by the appeal.

At the hearing of the cause on appeal, the only evidence offered was the bank's statement of March 28, 1904, the list returned by the assessor, the testimony of Mr. Gund, cashier of the bank, and a description of the real estate returned for assessment and claimed as assets of the bank. Mr. Gund testified that all the tracts of land claimed were owned by the bank, but that, because the bank was carrying too much real estate in its capital stock, it had been requested by the national bank examiner to reduce the amount of real estate; that it had accordingly deeded some of the tracts of land in trust to the officers of the bank; that they in turn had given mortgages, accomodation notes and overdrafts thereon to the bank; and that in this form all of the real estate in dispute had been included in the capital stock of the bank. This testimony was not disputed. There was no issue raised on the valuation of the capital stock, nor was any effort made by the board to increase its valuation as returned by the assessor. In the case of *Nebraska Telephone Co. v. Hall County,* 75 Neb. 405, an appeal arising under section 10523, Ann. St., we held that the language of the section "clearly limits the inquiry in the district court to the questions raised before the board of equalization." This was the view evidently taken by the learned trial judge, who at the close of the testimony entered judgment in favor of the bank, and set aside the action of the board of equalization in changing the amount of the deduction made from the list returned on account of real estate otherwise as-

sessed, and directed the assessment to be made in conformity with the list as returned.   To reverse this judgment the county has appealed to this court.

Aside from the one issue indicated, the other questions contended for in the brief of the county were not raised before the board of equalization.   Consequently, in view of the undisputed testimony in the record, we are convinced that the judgment of the district court on the issue presented was right and should be affirmed, which we accordingly recommend.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed July 12, 1907.  *Former judgment of affirmance vacated and judgment of district court reversed:*

1. **Taxation: ASSESSMENT: APPEAL.** The assessment of property for the purpose of taxation as ultimately fixed by the board of equalization is final, except upon appeal to the district court, and should not be disturbed on such appeal unless it appears from clear and convincing proof that it is erroneous.

2. ———: ASSESSMENT OF BANK STOCK. An assessor is required to assess the stock of a bank at its real value, and, where a bank owns real estate of a greater value than that at which it is carried on the bank books, such excess of value should be taken into consideration in fixing the value of the stock.

3. ———: ———. National banks are the agents of their stockholders for the purpose of listing their stock in such banks for taxation and paying the tax thereon.

JACKSON, C.

The plaintiff scheduled its property as of April 1, 1904, for the purpose of taxation, as follows:

First Nat. Bank of Blue Hill v. Webster County.

| | |
|---|---|
| Capital stock..................... | $50,000.00 |
| Surplus ....................... | 10,000.00 |
| Undivided profits................ | 4,968.53 |
| | |
| Total ..................... | $64,968.53 |

Real estate..............$34,380
Personal property......... 1,380

Total..............$35,760

Assessable value of shares at 20 per cent. of balance, $5,842.

This statement was adopted by the assessor as the basis of the valuation of the shares of stock of the bank. On April 2 of that year the plaintiff made a report to the comptroller of the currency of the affairs of the bank at the close of business on March 28. This report included the items of the banking house, furniture and fixtures, $1,000; other real estate and mortgages owned, $10,934.12; capital stock paid in, $50,000; surplus fund, $10,000; undivided profits, less expenses and taxes paid, $5,421.50. The county board of the defendant, while sitting as a board of equalization, having before it the bank's report to the comptroller of the currency and the return of the assessor, notified the bank to appear and show cause why the assessed valuation of its stock should not be increased. The bank appeared by its cashier and attorney and filed written objections to any increase in such valuation. The objections included a showing of the ownership of real estate of the value of $36,140. As a result of this proceeding the board added $23,445.88 to the assessed valuation of the stock of the bank, and thus increased its ultimate valuation for the purpose of taxation to $10,530.88. The bank appealed to the district court, where the action of the board was vacated, and the county brings the case to this court for review.

At the hearing in the district court the evidence related chiefly to the procedure before the board of equalization, although it was disclosed by the evidence of the cashier of the plaintiff that the bank was the beneficial owner of

several quarter sections of land, the title having been taken in the name of certain officers of the bank; that it was thus taken to prevent the real estate from appearing too bulky in their public statements. This real estate was represented on the books of the bank by a $2,000 real estate mortgage, an overdraft of $1,089.30, the cashier's note for $1,800, the note of the German National Bank for $2,600, and the real estate item of $10,934.12, which doubtless included the $2,000 mortgage, or a total of $16,423.42. The assessed valuation of the real estate claimed by the bank, after the process of equalization by the county board, was fixed at $31,805. Under this condition of the record the judgment of the district court was sustained in an opinion *ante,* p. 813. A rehearing has been allowed, and the case is before us for the second time.

It was stated in the former opinion that Mr. Gund (cashier) testified that all the tracts of land claimed were owned by the bank, but, because the bank was carrying too much real estate in its capital stock, it had been requested by the national bank examiner to reduce the real estate, and it had accordingly deeded some of the tracts of land in trust to the officers of the bank; that they in turn had given mortgages, accommodation notes and overdrafts thereon to the bank, and that in this form all of the real estate in dispute had been included in the capital stock of the bank. This statement is not complete. The items appearing on the books representing real estate amounted, as we have already shown, to but $16,423.42, while the value of the real estate as it was represented to be by the bank in its protest before the board of equalization was $36,140.

It is provided by our revenue law: "The president, cashier or other accounting officer of every bank or banking association, loan and trust or investment company, shall on the first day of April of each year make out a statement under oath. showing the number of shares comprising the

55

actual capital stock of such association, bank, or company, the name and residence of each stockholder, the number of shares owned by each and the value of said shares on the first day of April, and shall deliver such statement to the proper deputy assessor. Such capital stock shall thereupon be listed and assessed by him, and return made in all respects the same as similar property belonging to other corporations and individuals. Whenever any such bank, association or company shall have acquired real estate or other tangible property which is assessed separately, the assessed value of such real estate or tangible property shall be deducted from the valuation of the capital stock of such association or company. The assessor shall determine and settle the true value of each share of stock after an examination of such statement, and in case of a national bank an examination of the last report called for by the comptroller of the currency; if a state bank, the last report called for by the state banking board; and if the assessor deem it necessary, an examination of the officers of such bank, association or company, under oath, in determining and fixing the true value of such stock, and shall take into consideration the market value of such stock, if any, and the surplus and undivided profits. Such association, bank or company shall pay the taxes assessed upon its stock and shall have a lien thereon for the same." Comp. St. 1903, ch. 77, art. I, sec. 56. It will thus be seen that it is the province of the assessor to determine and settle the true value of the stock of a bank. For that purpose he should appraise each asset of the bank at its real value. The value thus ascertained becomes a charge against the item of value of stock and should be credited with the debts of the bank. The remainder is to be taken as the true value. From the true value of the stock the assessed valuation of the real estate and of such of the personal property as is locally assessed should be deducted, and the remainder is the amount to be apportioned among the shareholders, according to their holdings, as the value of their stock for the purpose of taxation,

One item of value is real estate, if any there be belonging
to the bank, and if it appears to the assessor that the
bank owns real estate of a value in excess of that at which
it is carried on the books, it is clearly his duty to take
such excess of value into consideration in determining the
actual value of the stock.  It appears from the record, on
the showing made by the bank itself, that it owned real
estate of the value of more than $19,000 in excess of its
book value.    That fact the assessor should have con-
sidered in valuing the capital stock, and, having failed to
do so, the county board, when sitting as a board of equali-
zation, not only had the right to consider this excess of
value, but it was their duty to do so, and the district court
should not have disregarded this important item in the
disposition of the case.  Furthermore, the valuation of the ·
stock of the bank was reduced by the assessor to the
extent of $34,380, assessed valuation of the real estate,
whereas the assessed valuation of the real estate as ulti-
mately fixed by the board of equalization was $31,805.
The latter sum is the one that should have been deducted
from the total valuation of the stock instead of the sum
actually deducted.

The assessed valuation of the stock of the shareholders
as ultimately fixed by the board of equalization becomes
final, except upon appeal to the district court, under the
provisions of the statute, and, where an appeal is taken,
the assessment made by the board of equalization should
not be disturbed, except upon clear and convincing proof
that it is erroneous.  The evidence taken at the trial in
the district court was insufficient upon which to base a
judgment setting aside the assessment as ultimately fixed
by the board of equalization.  No proof was offered of
the value of the assets of the bank other than the real
estate, and none whatever of the indebtedness.

The appellee insists that the entire proceeding is void,
because the tax, in case of national banks, is a liability of
the shareholder, and not of the banking corporation itself,
and because the shareholders were not personally noti-

fied of the proceedings before the board; but that is an erroneous interpretation of the federal statute. Shares of stock in a national bank are assessed to the individual stockholder at the place where the bank is located, but the bank is liable in the first instance for the payment of the tax, and is given a lien on the stock to secure repayment from the shareholder. The bank is made the agent of the shareholder, not only for the payment of the tax, but for the purpose of listing the stock for taxation. No other course would be practical, because in many cases, as in this, stockholders in national banks reside in different states and all are not accessible to local assessors. Our statute was enacted with reference to these conditions and is in entire harmony with the federal law.

With reference to the procedure before the county board of equalization, such board is authorized by statute, when they have reason to believe that any person or corporation has not been fairly assessed, to call before it such person, agent or officer of the corporation, under oath to give such information as they may possess touching the valuation of the property sought to be listed and assessed. It is also provided that appeals may be taken from the action of the county board of equalization to the district court, where the appeal should be heard as in equity, without a jury, and the court is required to determine anew all questions raised before the board which relate to the liability of property to assessment. No formal written notice was given in this instance, but the bank appeared by its proper officer and an attorney, and the board was not without jurisdiction. In this procedure the board sought the same source of information which the assessor was required to seek. It was not necessary to notify or bring before the board each individual shareholder.

It is recommended that our former judgment be vacated, the judgment of the district court reversed and the cause remanded.

AMES and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is vacated, the judgment of the district court is reversed and the cause remanded.

REVERSED.