ROBERT W. EVANS ET AL., APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

125 N. W. 2d 541

Filed December 27, 1963. No. 35534.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, A. A. Christensen, James J. Duggan, and William J. Orester, for appellant.

Barlow Nye and Dewayne Wolf, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and ZEILINGER, District Judge.

CARTER, J.

This is a condemnation proceeding. The property taken is 16 city lots and 1½ vacated streets in the city of Kearney, more particularly described in the petition. Each of the lots had a 50-foot frontage on Second Avenue and a depth of 150 feet to the west. The vacated streets were 80 feet in width. The lots and vacated streets adjoined and constituted one tract facing Second Avenue. The property was improved with a 1½-story house and some outbuildings. The property was wholly taken by the State for highway right-of-way purposes. The only question for determination is the value of the lands condemned. The jury returned a verdict for the condemnees in the amount of $13,500. The State has appealed.

The condemnees called four witnesses who testified

as to the value of the property taken. The condemner called but one witness, James L. Sawyers, on this issue. The sole question raised by this appeal is whether or not the trial court was in error in refusing to permit Sawyers to give his opinion of the value of the property taken.

The evidence shows that Sawyers is vice president of Farm Management and Appraisal Associates, of Kansas City, Missouri, and is a staff appraiser for this concern. He acquired a high school and college education. He successfully completed four courses required to obtain a professional appraisal designation, but had not met all requirements to obtain it. He is a licensed real estate broker in Nebraska. He stated that he had testified to values of several types of real estate in several states. He has appraised real estate numerous times, including about one-half of the appraisals made in connection with the new Interstate Highway in Buffalo County. He has made appraisals of rural lands in Buffalo County and city properties at the edge of the city of Kearney.

Sawyers testified that he had studied available records concerning the pattern of growth of the city and the direction of its growth from its financial and business section. He had found that its growth was toward the north, generally north of the Union Pacific Railroad and U. S. Highway No. 30. The industrial growth of the city was primarily along the railroad and highway, and at the airport.

He testified that he had examined the deeds to real estate on record at the courthouse which were in proximity to the lands taken and having similarity to such lands. He inquired of either the buyer or seller of such lands to determine the reason for sale, the sale price, the improvements thereon, the utilities available to it, and the uses to which it could be put. He stated that his purpose was to determine if the sellers and purchasers were willing purchasers and sellers who knew the uses to which the property could be put and whether

or not such sales were under compulsion by the sellers.

The witness testified to a careful inspection of the property and found it to be substantially as follows: The subject property consisted of 3.04 acres lying along and facing east on Second Street. There were improvements near the center of the tract consisting of a 1½-story frame house, a chicken house, an outdoor toilet, a wash house, and two sheds. The house had a brick foundation, lap siding, and wood shingles which he described as being in poor condition. The upstairs rooms and basement were in poor condition, the latter having a dirt floor. The old part of the house was lathed, plastered, and papered on the inside and was not in good condition. An added addition containing a kitchen and bathroom were newer and in better shape. The chicken house, wash house, and outside toilet were of some value but the two sheds had none. The lots not occupied by the improvements were not divided on the ground and were not in use for any purpose when viewed by the witness.

The city sewer was not connected to the residence, the closest point of connection being 2 blocks distant. There was no connection to the city water system, the closest connection point being 2 blocks distant. The house was electrically lighted. There was an open drain south of the house, evidently used to carry away wash water.

The witness was asked concerning the sale of a tract of similar land immediately across the street which was sold in 1958. The tract contained 8.06 acres and was unimproved. There was evidence that there had been no increase in value of this type of property between 1958 and 1962. It would appear that the sale price of this tract would bear upon the value of the subject tract. The evidence of other sales testified to by the witness was denied as being too remote in time or distance. We find no abuse of discretion in this.

The witness testified, in summary, to his experience as an appraiser generally, and that he had made numer-

ous appraisals in Buffalo County and in and around Kearney. His inspection of the improvements appears to have been a thorough one. He testified to special training in the appraisal field. He talked with realtors about general conditions affecting real estate values in and near Kearney. He had considered other sales of real estate in proximity to the subject property and had examined the public records with reference thereto. He had talked with parties to these land transactions to determine if the recorded sale prices reflected a market value. We think the witness, in the absence of any impeaching evidence, was qualified to give his opinion of the reasonable market value of the property taken.

It is fundamental that a qualified witness on the market value of real estate need not be a local resident, a real estate broker, nor have owned or sold land in the vicinity of the subject property. A professional appraiser of real estate may train himself for the purpose of determining the market value of real estate. He may learn from experience or by training the factors which influence buyers in purchasing real estate. The application of the yardstick thus learned may afford the necessary criterion for giving an opinion as to value. It is not necessary that a qualifying witness be familiar with every possible element that goes into the determination of market value. Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328.

In Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833, in dealing with a similar situation, this court said: "The correct rule as laid down by this court applicable in these circumstances is that, where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation."

The market value of real estate is almost always a matter of opinion. In determining market value, the courts are from necessity compelled to accept the opin-

ions of qualified witnesses as proof. Whether or not a witness is qualified to give an opinion as to value is a preliminary question for the court. Whether or not a witness is qualified to give an opinion is usually left to the discretion of the court. The discretion, however, is a legal one that is not absolute. Whether or not such discretion has been abused is reviewable on appeal. Wahlgren v. Loup River Public Power Dist., *supra*.

It is the general rule that a witness need not be an expert to testify to the value of land. Market value is not a question of science or skill upon which experts alone may give an opinion. Illinois Power & Light Corp. v. Talbott, 321 Ill. 538, 152 N. E. 486. It is necessary only to show that he has the means of forming an intelligent opinion derived from an adequate knowledge of the nature and kind of property in controversy, and of its value. City and County of Denver v. Lyttle, 106 Colo. 157, 103 P. 2d 1. It is not essential that every witness expressing an opinion shall have all-inclusive information of every detail of the elements entering into the value. Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S. W. 2d 22, 65 A. L. R. 440. It is most difficult to state an all-inclusive rule fixing the qualification of witnesses to give their opinions as to the market value of land. Their testimony is ordinarily received if they show an acquaintance with the property and are informed as to the state of the market, the weight and credibility of their evidence being for the jury. Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; Beebe & Runyan Furniture Co. v. Board of Equalization, 139 Neb. 158, 296 N. W. 764; 1 Orgel on Valuation Under Eminent Domain (2d Ed.), §§ 132 and 135, pp. 564 and 580, respectively.

We think that, on the basis of the qualifying testimony of the witness Sawyers, independent of any other considerations, the trial court abused its discretion in excluding the opinion of Sawyers as to the market value of the land taken. The error was prejudicial to the rights

of the State and requires a retrial of the case.

For the reason stated, the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.